# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| — vs— | ) |
| | ) |
| NATIONAL DECORATING SERVICE, INC., JAMES MCHUGH CONSTRUCTION CO., 200 NORTH JEFFERSON, LLC, LOEWENBERG & ASSOCIATES, MCZ/JAMESON DEVELOPMENT GROUP, LLC, a foreign company, and BOARD OF MANAGERS OF 200 NORTH JEFFERSON TOWER CONDOMINIUM ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the plaintiff, WESTFIELD INSURANCE COMPANY ("Westfield"), by their attorneys, Joseph P. Postel, David S. Osborne, Christopher J. Pickett and Justin K. Seigler, of Lindsay, Rappaport & Postel, LLC, bring this action under the Declaratory Judgment Act (28 USC 2201, *et seq*.), against NATIONAL DECORATING SERVICE, INC. ("National"), JAMES MCHUGH CONSTRUCTION CO. ("McHugh"), 200 NORTH JEFFERSON, LLC ("200 North"), LOEWENBERG & ASSOCIATES, ("Loewenberg"), MCZ/JAMESON DEVELOPMENT GROUP, LLC ("MCZ/Jameson"), and BOARD OF MANAGERS OF 200 NORTH JEFFERSON TOWER CONDOMINIUM ASSOCIATION ("Association"), and allege as follows:

## Nature of the Action

1. This is a declaratory judgment action wherein commercial general liability ("CGL") insurer, Westfield, seeks a declaration that it does not owe a duty to defend or indemnify National, McHugh, 200 North, Loewenberg, or MCZ/Jameson against an underlying construction defect lawsuit filed by the Association in the Circuit Court of Cook County, Illinois.

## Parties

2. Westfield is an Ohio corporation. Westfield's principal place of business is located in Westfield Center, Ohio.

3. National is a Delaware corporation. National's principal place of business is located in Oak Brook, Illinois.

4. McHugh is an Illinois corporation. McHugh's principal place of business is located in Chicago, Illinois.

5. 200 North is an Illinois limited liability company. Upon information and belief, none of the members of 200 North is an Ohio citizen.

6. Loewenberg is a dissolved Illinois corporation. Loewenberg's last principal place of business was located in Chicago, Illinois.

7. MCZ/Jameson is a foreign limited liability company. Upon information and belief, none of the members of MCZ/Jameson is an Ohio citizen.

8. The Association is an Illinois not-for-profit corporation. The Association's principal place of business is located in Chicago, Illinois.

## Jurisdiction and Venue

9. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because

there is complete diversity of citizenship between the plaintiffs and the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## The Underlying Pleadings

11. On January 3, 2012, the Association filed a complaint in Cook County, Illinois, styled *The Association v. McHugh, et al.*, Case No. 12 L 480. The Association filed a first amended complaint then, on February 8, 2013, a second amended complaint (the "*Association* complaint"). Copies of the original, first, and second amended *Association* complaints are attached hereto as Exhibits A, B and C, respectively, and are incorporated herein by reference.

12. The second amended *Association* complaint states a claim for breach of the implied warranty of habitability (Count I) against McHugh, 200 North, Loewenberg and MCZ/Jameson,[1] alleging that:

    a. The project in question was new construction of a 24-story residential condominium building. (¶1)

    b. MCZ/Jameson was the developer. (¶9)

    c. 200 North was the developer and seller. (¶10)

    d. Loewenberg was the architect. (¶12)

    e. McHugh was the general contractor. (¶15)

    f. "The Condominium has experienced construction defects consisting generally of: a) significant cracking of the exterior concrete walls, interior walls and ceilings and; b) significant leakage through the exterior concrete walls, balconies and windows. The construction defects include the common elements of the Condominium." (¶22)

---

[1] Count I also pleads breach of the implied warranty of habitability against National, but only to preserve the claim for appeal. The court dismissed Count I with respect to National in January, 2013.

g. "[McHugh] contributed to the construction defects identified in Paragraph 22 in one or more of the following ways: a) its concrete work was deficient as to: concrete mix, finishing technique, placement of plastic rebar support chairs, and the formwork plugs; b) its caulking work was deficient as to finishing technique, coating application, inconsistent thickness, and unsealed guardrail bases; c) its window installation was deficient as to pitch of the window sill; d) its balcony installation was deficient as to membrane installation and pitch." (¶23)

h. "[Loewenberg] contributed to the construction defects identified in Paragraph 19 in one or more of the following ways: a) Failed to anticipate cracking from its design of a large case in place concrete structure with multiple openings like windows; b) Failed to take proper precautions in its design to avoid cracking from its cast-in-place concrete structure design including the failure to properly detail: 1) the concrete mix design; 2) placement of concrete forms; and 3) sealant on the exterior concrete; c) Failed to adequately observe the construction work and/or protect [MCZ/Jameson], [200 North], and Association's Members from the aforesaid construction defects during the construction phase of the Condominium Construction." (¶24)

i. "[National] entered into a subcontractor agreement with [McHugh] to complete all painting work in accordance with contract documents. The painting work of [National] on the subject project was defective in that its exterior coating was too thin, in violation of the contract documents and industry custom and practice." (¶29)

j. "The construction defects were caused by improper design, materials or workmanship." (¶32)

k. "The construction defects rendered the property not reasonably fit for use as a residence as the structure cracked and leaked. The construction defects caused property damage to the interior ceilings and floors of the units." (¶35)

l. "As a direct and proximate result of the aforesaid breach of the implied warranty of habitability, the Association has incurred the cost to investigate the construction defects, obtain bids, correct the construction defects and will incur the cost of correcting the construction defects, as well as attorney fees and the cost of filing this lawsuit." (¶36)

m. "As a direct and proximate result of the aforesaid breach of the implied warranty of habitability, all unit owners in the Association were damaged in that they were deprived of valuable common elements." (¶37)

n. The Association's prayer for relief seeks to recover: "for the reasonable cost of investigating and correcting defective work, property damage, attorney's fees and such other relief that the court deems proper."

4

13. The *Association* complaint also states a claim for breach of contract against 200 North (Count II) because it "failed to design and construct the Condominium in a reasonably workmanlike manner and failed to correct the construction defects within a reasonable time after it was notified of the construction defects." (¶43)

14. The *Association* complaint also states a claim for breach of fiduciary duty against 200 North and MCZ/Jameson (Count III) because they "failed to budget, collect and set aside reasonable reserves for capital expenditures and deferred maintenance *** and failed to disclose the risks of water infiltration problems to prospective buyers." (¶53)

15. The *Association* complaint also states a claim for consumer fraud against 200 North and MCZ/Jameson (Count V) because of certain "deceptive acts…done for the purpose of inducing potential purchasers of the condominium into purchasing said units[.]" (¶¶56-57)

16. The *Association* complaint also states a claim for violation of the Chicago Condominium Ordinance 200 North and MCZ/Jameson (Count IV) because of certain "deceptive acts" and seeks to recover "the reasonable cost of investigating and correcting defective work [and] attorney's fees." (¶68)

17. On or about January 9, 2014, McHugh filed a third-party complaint against National (the "*McHugh* third-party complaint"). A copy of the *McHugh* third-party complaint is attached hereto as Exhibit D, and is incorporated herein by reference.

18. The *McHugh* third-party complaint contains two counts against National Decorating for breach of contract (Count I) and "express contractual defense & indemnity" (Count II).

19. In support of Count I, for breach of contract, McHugh alleges that:

   a. "[the Association] has alleged claims that arise out of, result from or are otherwise connected to the performance of [National's] work under the [National]

5

  subcontract." (¶10)

 b. "[National] breached the [National] subcontract for the reasons alleged by [the Association] in the Second Amended Complaint, including, but not limited to, that the painting work of [National] on the Condominium was defective because the exterior coating was too thin, in violation of the contract documents and industry custom and practice." (¶11)

 c. If McHugh is liable to the Association, McHugh's liability is a result of National's breach of contract. (¶13)

20. In support of Count II, "express contractual defense & indemnity," McHugh alleges that:

 a. National is contractually obligated to defend and indemnity McHugh. (¶16)

 b. National's contractual indemnity obligation to McHugh is described as: "To the fullest extent permitted by law, [National] shall indemnify and hold harmless [McHugh]…from and against all claims, damages, losses and expenses, including, but not limited to, attorney's fees and other litigation costs arising out of or resulting from the performance of the Work, provided that any such claim, loss or expense (1) is attributed to bodily injury, sickness, disease or death, or to injury to or destruction of property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of [National]…The obligations of [National] under this Article 9 shall not extent to claims, damages, losses and expenses which are primarily due to acts of negligence of [McHugh], Owner or Owner's Consultants." (*Id.* at Exhibit C, attached thereto)

## The Westfield CGL Policy

 21. Westfield issued policy no. TRA 4 248 979 to "National Decorating Service, Inc., 2210 Camden Ct., Oak Brook, IL 60523." A copy of the policy is attached hereto as Exhibit E, and is incorporated herein by reference.

 22. The policy was initially effective from February 28, 2008 through February 28, 2009. It was renewed three times until it expired on November 1, 2011. A copy of the policy effective during each renewal period is attached hereto as Exhibit F, G and H, respectively.

 23. During the initial policy period and all renewal periods, the Westfield policy provided as follows:

6

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

24. The CGL coverage form includes the following provision regarding who is an insured:

**SECTION II – WHO IS AN INSURED**

If you are designated in the Declarations as *** an organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

25. The CGL coverage form contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

… "[P]roperty damage" expected or intended from the standpoint of the insured…

**b. Contractual Liability**

… "[P]roperty damage" ... for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract"…

\* \* \*

**j. Damage To Property**

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

8

> This exclusion only applies to that particular part of "your work" out of which the damages arises.
>
> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not yet been physically injured, arising out of:
>
> > **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
> >
> > **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

26. The CGL contains the following Definitions:

> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or
>
> agreement;
>
> If such property can be restored to use by:
>
> a. The repair, replacement, adjustment or removal of "your product" or "your work;" or
>
> b. Your fulfilling the terms of the contract or agreement.
>
> **9.** "Insured contract" means:
>
> > \* \* \*
>
> **f.** That part of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for "property damage" ... to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
>
> > \* \* \*

9

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**16.** "Products-completed operations hazard":

**a.** Includes all ... "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

1. Products that are still in your physical possession; or

2. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    a. When all of the work called for in your contract has been completed.

    b. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.

\* \* \*

**20.** "Your product" means:

      a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

* * *

      a. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

      b. The providing of or failure to provide warnings or instructions.

* * *

**21.** "Your work" means:

      a. Work or operations performed by you or on your behalf; and

      b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

      b. The providing of or failure to provide warnings or instructions.

* * *

    27.    The Westfield policy includes blanket additional insured endorsement CG 2010 10-01, which provides that:

SCHEDULE

Name of Person or Organization:
ANY PERSON OR ORGANIZATION FOR WHOM YOU ARE PERFORMING OPERATIONS WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING ON A CONTRACT OR AGREEMENT THAT SUCH A PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON

11

YOUR POLICY.

\*\*\*

**Section II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

28.     The Westfield policy also includes blanket additional insured endorsement CG 2037 10-01, which provides that:

SCHEDULE

Name of Person or Organization:
SEE BELOW

**Location And Description of Completed Operations:**
ANY PERSON OR ORGANIZATION FOR WHOM YOU ARE PERFORMING OPERATIONS WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING ON A CONTRACT OR AGREEMENT THAT SUCH A PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY.

\*\*\*

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured an included in the "products-completed operations hazard."

29.     The Westfield policy also provides umbrella coverage, which is subject to the same exclusions listed above, and which includes the following coverage grant and definitions:

1. **Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend or participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty

to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

b.  This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage is caused by an "occurrence" that takes place in the coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and***

***

3.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work", that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement.

13.  "Occurrence" means an accident or offense resulting in "personal injury" or "property damage."

   **a.** With respect to "bodily injury" and "property damage", an accident includes continuous or repeated exposure to substantially the same general harmful conditions. *** All "personal injury" and "property damage" resulting from an accident or offense shall be considered as resulting from one "occurrence."

17.  "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          **(a)** When all of the work called for in your contract has been completed.

          **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than on job site.

          **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

      **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

      **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**18.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**19.** "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by

reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

## Coverage Allegations

### Count I – No Duty To Defend Or Indemnify National

30. Neither the *Association* complaint nor the *McHugh* third-party complaint allege an "occurrence," nor any "property damage," as those terms are defined in the policy.

31. Neither the *Association* complaint nor the *McHugh* third-party complaint allege an "occurrence," nor any "property damage," as those terms are defined in the policy, that is not subject to one or more of the aforesaid policy exclusions.

32. As such, Westfield does not owe a duty to defend or indemnify National against the *McHugh* third-party complaint.

33. There is an actual and justiciable controversy among the parties as it relates to Westfield's obligations under the policy.

WHEREFORE, Westfield prays that this Honorable Court enter an order finding and declaring that Westfield does not owe a duty to defend or indemnify National with respect to the *McHugh* third-party complaint.

### Count II – No Duty To Defend Or Indemnify McHugh

34. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy.

35. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy, as those terms are defined in the policy, that is not subject to one or more of the aforesaid policy exclusions.

36. McHugh does not qualify for additional insured coverage under the terms of the policy.

37. As such, Westfield does not owe a duty to defend or indemnify McHugh against the *Association* complaint.

38. There is an actual and justiciable controversy among the parties as it relates to Westfield's obligations under the policy.

WHEREFORE, Westfield prays that this Honorable Court enter an order finding and declaring that Westfield does not owe a duty to defend or indemnify McHugh with respect to the *Association* complaint.

### Count III – No Duty To Defend Or Indemnify 200 North

39. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy.

40. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy, as those terms are defined in the policy, that is not subject to one or more of the aforesaid policy exclusions.

41. 200 North did not enter into a contract with National.

42. 200 North does not qualify as an additional insured under the terms of the policy.

43. As such, Westfield does not owe a duty to defend or indemnify 200 North against the *Association* complaint.

44. There is an actual and justiciable controversy among the parties as it relates to Westfield's obligations under the policy.

WHEREFORE, Westfield prays that this Honorable Court enter an order finding and declaring that Westfield does not owe a duty to defend or indemnify 200 North with respect to the *Association* complaint.

### Count IV – No Duty To Defend Or Indemnify Loewenberg

45. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy.

46. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy, as those terms are defined in the policy, that is not subject to one or more of the aforesaid policy exclusions.

47. Loewenberg did not enter into a contract with National.

48. Loewenberg does not qualify as an additional insured under the terms of the policy.

49. As such, Westfield does not owe a duty to defend or indemnify Loewenberg against the *Association* complaint.

50. There is an actual and justiciable controversy among the parties as it relates to Westfield's obligations under the policy.

WHEREFORE, Westfield prays that this Honorable Court enter an order finding and declaring that Westfield does not owe a duty to defend or indemnify Loewenberg with respect to the *Association* complaint.

### Count V – No Duty To Defend Or Indemnify MCZ/Jameson

51. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy.

52. The *Association* complaint does not allege an "occurrence," nor any "property damage," as those terms are defined in the policy, as those terms are defined in the policy, that is not subject to one or more of the aforesaid policy exclusions.

53. MCZ/Jameson did not enter into a contract with National.

54. MCZ/Jameson does not qualify as an additional insured under the terms of the policy.

55. As such, Westfield does not owe a duty to defend or indemnify MCZ/Jameson against the *Association* complaint.

56. There is an actual and justiciable controversy among the parties as it relates to Westfield's obligations under the policy.

WHEREFORE, Westfield prays that this Honorable Court enter an order finding and declaring that Westfield does not owe a duty to defend or indemnify MCZ/Jameson with respect to the *Association* complaint.

          Respectfully submitted,
          LINDSAY, RAPPAPORT & POSTEL, LLC

          By:   /s/ Joseph P. Postel
              Bar Number: 6189515
              Attorney for Westfield Insurance Company

Joseph P. Postel (#6189515)
David S. Osborne (#6237821)
Christopher J. Pickett (#6287096)
Justin K. Seigler (#6310143)
**Lindsay, Rappaport & Postel, LLC**
10 S. LaSalle Street, Suite 1301
Chicago IL 60603 (312-629-0208)