UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Westfield Insurance Co., | |
| Plaintiff, | Case No. 14 C 1572 |
| v. | Judge John Robert Blakey |
| National Decorating Service, Inc., James McHugh Construction Co., 200 North Jefferson, LLC and MCZ/Jameson Development Group, LLC | |
| Defendants. | |

# **MEMORANDUM OPINION AND ORDER**

This case presents a straightforward, but unsettled, question of Illinois law: Is there an "occurrence" under standard-form comprehensive general liability ("CGL") policies when the named insured contractor's faulty workmanship causes damage to a building that is beyond the scope of its own work there? The answer to that question determines whether Plaintiff Westfield Insurance owes a duty to defend Defendants—its Named Insured (National Decorating) and Additional Insureds (200 North Jefferson, McHugh Construction and MCZ/Jameson)—in the faulty workmanship case pending in the Circuit Court of Cook County. The underlying case is captioned: *Board of Managers of 200 North Jefferson Tower Condominium Association v. 200 Jefferson, LLC*, Case No. 12 L 480 (the "Underlying Action").

The parties now cross-move for summary judgment, disputing which line of conflicting case law this Court should follow. Having reviewed the case law and having considered the CGL policy language here and the purpose behind CGL insurance, this Court grants Defendants' summary judgment motions [65] [73] [76] [123]; and denies Plaintiff's cross-motion [70].

I.  **Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, each party with respect to the other's motion. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Facts[1]

### A. The Underlying Action

On January 3, 2012, the Board of Managers of 200 North Jefferson Tower Condominium Association (the "Association") filed the Underlying Action in the Circuit Court of Cook County, naming 200 North Jefferson, LLC ("200 North Jefferson"), James McHugh Construction Co. ("McHugh Construction"), MCZ/Jameson Development Group, LLC ("MCZ/Jameson"), National Decorating Service, Inc. ("National Decorating") and others as defendants. Westfield SOF ¶ 10. The Association filed the operative five-count Third Amended Complaint on November 4, 2014. McHugh SOF ¶ 9; Westfield SOF ¶ 12.

The Underlying Action arises from the construction of a 24-story condominium building located at 200 North Jefferson Street, Chicago, Illinois (the "200 North Jefferson Building" or the "Building"). Westfield SOF ¶ 13(a). 200

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto.
"200 North SOF" refers to 200 North Jefferson's statement of undisputed facts [78], with Plaintiff's responses [87]. "200 North SOAF" refers to 200 North Jefferson's statement of additional facts [92], with Plaintiff's responses [105].
"McHugh SOF" refers to McHugh Construction's statement of undisputed facts [67], with Plaintiff's responses [89]. "McHugh SOAF" refers to McHugh Construction's statement of additional facts [93], with Plaintiff's responses [103].
"MCZ SOF" refers to MCZ/Jameson's statement of undisputed facts [123], with Plaintiff's responses [123].
"National Decorating SOF" refers to National Decorating's statement of undisputed facts [75], with Plaintiff's responses [88]. "National Decorating SOAF" refers to National Decorating's Construction's statement of additional facts [86], with Plaintiff's responses [104].
"Westfield SOF" refers to Plaintiff's statement of undisputed facts [72], with responses from 200 North Jefferson [92], McHugh Construction [93] and National Decorating [86]. "Westfield SOAF" refers to Plaintiff's multiple, identical statements of additional facts [87] [88] [89], with responses from 200 North Jefferson [100], McHugh Construction [98] and National Decorating [101].

3

North Jefferson was the owner and developer of the Building. 200 North SOF ¶ 5. 200 North Jefferson retained McHugh Construction to be its general contractor. 200 North SOF ¶ 6; McHugh SOF ¶ 3; Westfield SOF ¶ 13(d). Pursuant to a May 13, 2005 contract, McHugh Construction retained National Decorating as a subcontractor to perform all painting work at the 200 North Jefferson Building. McHugh SOF ¶ 4; Westfield SOF ¶ 13(e).

In the *Association* Third Amended Complaint, the Association sought recovery for damages caused by various categories of faulty workmanship at the 200 North Jefferson Building. The damages included: (1) significant cracking of the exterior concrete walls, interior walls and ceilings; (2) significant leakage through the exterior concrete walls, balconies and windows; (3) defects to the common elements of the Building; and (4) damage to the interior ceilings, floors, interior painting, drywall and furniture in the units. McHugh SOF ¶¶ 9-10; National Decorating SOF ¶ 11; Westfield SOF ¶ 13(f). In Count I, the Association brought a claim for breach of the implied warranty of habitability against 200 North Jefferson, McHugh Construction, MCZ/Jameson and National Decorating for, among other things, the cost of investigating and correcting the aforementioned defective work and property damage. 200 North SOF ¶ 19; McHugh SOF ¶ 11; MCZ/Jameson SOF ¶ 4; Westfield SOF ¶ 13.

Also in the Underlying Action, on January 9, 2014, McHugh Construction filed a Third-Party Complaint against National Decorating. Westfield SOF ¶ 19. The operative Amended Third-Party Complaint contains three causes of action

against National Decorating based on the Underlying Action: breach of contract (Count I); breach of express contractual defense and indemnity (Count II); and negligence (Count III). Westfield SOF ¶¶ 20-21. There also are two causes of action directed against another party that are not relevant to this coverage dispute. In Counts I to III, McHugh Construction alleged that National Decorating's faulty workmanship damaged "the work of other trades on the project, specifically resulting in the peeling and cracking of drywall." Westfield SOF ¶¶ 20-21. Count III measured McHugh Construction's damages as the cost of repairing National Decorating's faulty workmanship and "damage to the work of other trades on the project, including the peeling and cracking of drywall." Westfield SOF ¶ 21.

### B. Coverage Dispute

Plaintiff Westfield Insurance Company ("Westfield Insurance") disputes that it owes Defendants a duty to defend under Policy No. TRA 4 248 979 (the "Westfield Insurance Policy" or the "Policy"). Westfield SOF ¶ 22. The Policy is an "occurrence"-based CGL policy issued to National Decorating as the Named Insured. 200 North SOAF ¶ 43; McHugh SOF ¶ 1; National Decorating SOF ¶ 13; Westfield SOF ¶ 22. The Westfield Insurance Policy was initially effective from February 28, 2008 to February 28, 2009 and was renewed three times, until it expired on November 1, 2011. McHugh SOF ¶ 2; Westfield SOF ¶ 23. The operative policy language remained the same throughout that period.

In the Insuring Agreement, the Westfield Insurance Policy provides that Plaintiff:

5

> … will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

McHugh SOF ¶ 14; Westfield SOF ¶ 24. The Insuring Agreement further provides that the insurance applies only to "bodily injury" and "property damage" "caused by an 'occurrence.'" Westfield SOF ¶ 24.

The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Westfield SOF ¶ 24. The Policy does not define the word "accident." The term "property damage" is defined in relevant part as:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]

McHugh SOF ¶ 15; Westfield SOF ¶ 24.

There is no dispute that 200 North Jefferson, McHugh Construction and MCZ/Jameson (as clarified at the November 5, 2015 motion hearing) are Additional Insureds under the Westfield Insurance Policy based on the contracts that they entered into among one another and National Decorating. 200 North SOF ¶¶ 6-9, 12, 14; McHugh SOF ¶¶ 4-6, 8; MCZ/Jameson SOF ¶ 16. The Westfield Insurance Policy includes two Additional Insured Endorsements, and, for purposes of this Court's analysis, there is no significance whether the Additional Insured

Defendants are covered by one or both Endorsements. The first standard-form Blanket Additional Insured Endorsement states:

> Name of Person or Organization:
> ANY PERSON OR ORGANIZATION FOR WHOM YOU ARE PERFORMING OPERATIONS WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING ON A CONTRACT OR AGREEMENT THAT SUCH A PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY.
> ***
> **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard."

200 North SOAF ¶ 42; McHugh SOF ¶ 7. The second Additional Insured Endorsement states:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

200 North SOAF ¶ 41.

The Westfield Insurance Policy defines "your work" as "work or operations performed by you or on your behalf," and, in turn, "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy." McHugh SOAF ¶¶ 1-2; National Decorating SOAF ¶¶ 1-2. National Decorating is the Named Insured. 200 North SOAF ¶ 43. 200 North Jefferson, McHugh Construction and MCZ/Jameson are not Named Insureds. 200 North SOAF ¶ 44; McHugh SOF ¶ 3; MCZ/Jameson SOF ¶ 15; National Decorating SOAF ¶ 3.

7

**III.    Analysis**

The parties seek a declaration whether Plaintiff owes a duty to defend Defendants—its Named Insured (National Decorating) and Additional Insureds (200 North Jefferson, McHugh Construction and MCZ/Jameson)—in the Underlying Action.  There is no dispute that the costs to repair and replace National Decorating's faulty painting work are not covered.  Instead, the parties dispute whether the damage National Decorating caused to parts of the 200 North Jefferson Building beyond its scope of work triggers Plaintiff's duty to defend.  200 North SOF ¶ 19; McHugh SOF ¶¶ 9-11; National Decorating SOF ¶ 11; Westfield SOF ¶ 13, 13(f).  This Court's determination of coverage turns on whether this "property damage" resulted from an "occurrence," meaning an "accident."  Westfield SOF ¶ 24.  The term "accident" is not defined by the Westfield Insurance Policy.  Plaintiff raises no other coverage defenses in its summary judgment motion.

Under Illinois law, which applies here, to determine whether Plaintiff owes a duty to defend, this Court must compare the allegations in the underlying complaint, here, the *Association* Third Amended Complaint and the *McHugh Construction* Amended Third-Party Complaint, with the insurance policy language.  *Lagestee-Mulder, Inc. v. Consolidated Insurance Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012).  The duty to defend is broader than the duty to indemnify because insurers must defend their policyholders in actions that are even potentially within coverage.  *Lagestee-Mulder*, 682 F.3d at 1056; *CMK Development Corp. v. West Bend Mutual Insurance Co.*, 917 N.E.2d 1155, 1163 (Ill. App. Ct. 2009).  The factual allegations in

8

the underlying complaint determine whether a duty to defend exists. If the underlying complaint alleges facts within or potentially within policy coverage, insurers are obligated to defend their policyholders, even if the underlying allegations are groundless, false or fraudulent. *CMK Development*, 917 N.E.2d at 1163. Because the duty to defend includes claims even potentially within coverage, this Court will declare that Plaintiff owes no duty to defend only if it is clear from the face of the underlying complaint that the stated facts do not fall within the scope of coverage. *Lagestee-Mulder*, 682 F.3d at 1056.

The construction of an insurance policy is a question of law. *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 527 (Ill. App. Ct. 2011). Illinois cases interpreting identical, standard-form "occurrence" language, which defines "occurrence" as an "accident," have added a gloss to the word "accident." The "natural and ordinary consequences of faulty construction," such as the cost to repair and replace the faulty workmanship itself, are not accidental and thus are not a covered "occurrence." *Lyerla v. AMCO Insurance Co.*, 536 F.3d 684, 689 (7th Cir. 2008); *see also Nautilus Insurance Co v. Board of Directors of Regal Lofts Condominium Association*, 764 F.3d 726, 731 (7th Cir. 2014); *J.P. Larsen*, 956 N.E.2d at 531; *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 831 N.E.2d 1, 11-12 (Ill. App. Ct. 2005). As one Court stated, a "CGL policy does not cover an accident of faulty workmanship but rather faulty workmanship that causes an accident." *Pekin Insurance Co. v. Richard Marker Associates, Inc.*, 682 N.E.2d 362, 366 (Ill. App. Ct. 1997) (internal quotations omitted). Thus, Illinois

9

courts find that, in order for a construction defect to qualify as an "occurrence," it must damage something other than the "project itself" or the "building itself." *E.g.*, *J.P. Larsen*, 956 N.E.2d at 531-32; *CMK Development*, 917 N.E.2d at 1164-65; *Monticello Insurance Co. v. Wil–Freds Construction, Inc.*, 661 N.E.2d 451, 456-57 (Ill. App. Ct. 1996). The parties dispute the contours of this rule.

*Ohio Casualty Insurance Co. v. Bazzi Construction Co., Inc.*, 815 F.2d 1146 (7th Cir. 1987), and *J.P. Larsen, supra*, instruct that this Court must examine the scope of National Decorating's work, as the Named Insured, when determining if there is "property damage" resulting from an "occurrence." This controlling case law, along with the CGL policy language and the purpose behind CGL insurance, compels this Court's conclusion that damage beyond the scope of the named insured's work at a building is "property damage" resulting from an "occurrence."

In *Bazzi Construction*, 815 F.2d at 1148-49, the Seventh Circuit found that the insurer owed a duty to defend the named insured general contractor, emphasizing the limited scope of work performed by the named insured. The named insured was tasked with remodeling an existing garage for use as a meat market, and, to that end, added a new second story to the garage. *Id.* at 1146-47. The structural integrity of the existing garage, however, was compromised, causing the owners in the underlying action to seek damages for having to reinforce the roof joists and the steel columns in the garage, and for having to tear down and rebuild the second floor. *Id.* at 1147-48.

10

Although the named insured worked on part of the garage, the Seventh Circuit nonetheless found a duty to defend. The Court explained that the owners had alleged damage to property beyond the scope of the named insured's work, that is, to other parts of the garage. *Id.* at 1148. By comparison, had the named insured been charged with constructing an entirely new garage, then damages to any part of the garage would not have been covered. *Id.* at 1148-49. The damages in this hypothetical would have fallen within the scope of the named insured's work—the entire garage. That was not the case in *Bazzi Construction*, nor is it the case here.

The Appellate Court in *J.P. Larsen*, 956 N.E.2d at 526, also found that the insurer had a duty to defend the named insured—this time, the subcontractor. The named insured subcontractor applied sealant to windows installed by the general contractor in a condominium building. *Id.* at 526. The windows leaked, however, damaging the condominium common elements, the units and the unit owners' personal property. *Id.* at 526, 528-29. Similar to here, the condominium association sued the general contractor for breach of express and implied warranties, seeking recovery for the cost to repair the faulty work and the attending damages. *Id.* at 526, 528-30. The general contractor, in turn, sued the named insured subcontractor for contribution. *Id.* The named insured tendered its defense to its insurer, and the insurer denied any duty to defend based on the absence of "property damage" resulting from an "occurrence." *Id.* at 526.

The Appellate Court disagreed. The Court began, based on its survey of Illinois law (including *Viking Construction* and other cases cited by Westfield

Insurance), with the principle that "damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy." *J.P. Larsen*, 956 N.E.2d at 532 (emphasis in original). Such damage had been pled in the underlying action. The Appellate Court explained that the underlying damages sought by the condominium association were neither intangible nor limited to the cost to repair or replace the faulty window sealant. *Id.* at 530-31. Instead, the underlying damages included personal property and water damage "throughout a building not constructed by [the named insured]." *Id.* at 532. Thus, as here, there was more than just an allegation of damage to the subcontractor's defective work. *Id.*

Also instructive, and perhaps the most on-point case, is *Old Republic Insurance Co. v. Leopardo Cos., Inc.*, No. 14-2421 (N.D. Ill. March 11, 2015) (Dkt. 55) (unavailable on LexisNexis and Westlaw). In that case, the Court found that the insurer had a duty to defend the general contractor and thus granted the general contractor's summary judgment motion and denied the insurer's cross-motion. Like McHugh Construction here, the general contractor in *Leopardo* was an additional insured on a policy procured by its subcontractor. *Leopardo Op.* at 1. Also as here, the coverage dispute arose from the subcontractor's faulty workmanship. *Id.* The subcontractor installed defective fan coil units as part of a hotel renovation, causing moisture and water to drip onto guestroom ceilings and damage walls, surrounding construction materials and the fit and finishes of each guestroom. *Id.* at 1-2. The hotel sued the general contractor for these damages in the underlying action. *Id.* at 2.

The Court found that the insurer had a duty to defend the general contractor in the ensuring coverage action, and it rejected the insurer's argument that the underlying complaint did not allege damage to something other than the project itself. *Id.* at 5-8. The premise of the insurer's argument—that coverage depended on the scope of the general contractor's work—was incorrect. *Id.* at 5. As the Court explained, coverage depended on the scope of the subcontractor's work as the named insured, as shown by the policy as a whole. The Court pointed to the Additional Insured Endorsement, which is materially indistinguishable from the ones here. The Endorsement confirmed that the named insured's scope of work determined whether the underlying complaint alleged "property damage" caused by an "occurrence," because the coverage provided to additional insureds was defined in relation to the named insured's work. *Id.* at 6-7. The Endorsement stated that it provided:

> … coverage only with respect to liability for bodily injury or property damage caused, in whole or in part, by your acts or omissions; or the acts or omission of those acting on your behalf in the performance of your ongoing operations for the additional insured.

*Id.* at 6. The policy in *Leopardo*, like the Westfield Insurance Policy, defined the term "your" as the "Named Insured." *Id.*

Against this Court's analysis, Plaintiff's argument that the Court in *Leopardo* misunderstood the purpose of additional insured coverage fails. Plaintiff argues that additional insured coverage is meant to cover the additional insured for vicarious liability claims only and not their own negligence, but, even if that

13

argument is credited, it does not rebut the Court's interpretation of the insurance policy as a whole to interpret the term "occurrence."

Moreover, even if Plaintiff's argument had merit (and it does not), the Court's conclusion in *Leopardo* was bolstered by its analysis of the purpose behind CGL insurance, and this Court finds that analysis persuasive. *Id.* at 7. Purpose is instructive when interpreting insurance policies. *J.P. Larsen*, 956 N.E.2d at 527, 530; *CMK Development*, 917 N.E.2d at 1167-68. The Court in *Leopardo*, citing the Seventh Circuit's decision in *Lagestee-Mulder*, 682 F.3d at 1057, explained that CGL insurance is not intended to pay the costs associated with repairing or replacing the policyholder's defective work and products, which is an economic loss. *Leopardo Op.* at 7. That coverage would render insurance akin to a performance bond and could result in the insured contractor being paid twice for defective work (once by the customer and a second time by the insurer). *Leopardo Op.* at 5; *see also J.P. Larsen*, 956 N.E.2d at 530. Instead, CGL insurance is meant to protect the policyholder from liability for damage to the property of others. *Leopardo Op.* at 7. As such, the Court found coverage for damage beyond the scope of the named insured subcontractor's work.

In contrast to these cases, Plaintiff, despite citing extensive case law, identifies just four cases finding no duty to defend when the named insureds caused property damage to parts of the building or project outside the scope of their work. This Court excludes from its analysis a fifth case, *Paradise Inground Pools, Inc. v. Black Diamond Plumbing & Mechanical, Inc.*, 2012 IL App (2d) 110819-U (no North

14

Eastern Reporter cite available), which is a non-precedential opinion under Illinois Supreme Court Rule 23. In any event, none of Plaintiff's cases convince this Court to reach Plaintiff's desired outcome. In each case, the Court relied on the general language from earlier cases that a contractor's damage to a "building" or "project" that results from its defective construction is not a covered "accident." *Acuity v. Lenny Szarek, Inc.*, No. 13-7505, ___ F. Supp. 3d ___, 2015 WL 5163195, at *7 (N.D. Ill. Sept. 2, 2015); *American Fire & Casualty Co. v. Broeren Russo Construction, Inc.*, 54 F. Supp. 2d 842, 848-49 (C.D. Ill. 1999); *American Family Mutual Insurance Co. v. Hummel Development Group, LLC*, No. 11 CH 24601, 2013 WL 6631068, at *4-6 (Ill. Cir. Ct. Nov. 21, 2013); *QBE Insurance Corp. v. Barrier Corp.*, Nos. 11 CH 9383, 11 CH 41501, 2012 WL 6900226, at *1, 8-9 (Ill. Cir. Ct. Nov. 19, 2012). The cases, however, did not analyze the source of that language, let alone the significance of the distinctions this Court draws today.

For example, in *Broeren Russo Construction*, 54 F. Supp. 2d at 844, 847-48, the contractor's faulty installation of an Exterior Insulation Finish System caused water damage beyond the scope of its work—to interior sections of the building. The Court, however, found that there was no "occurrence," relying on *Wil-Freds Construction*, *supra*, and *Indiana Insurance Co. v. Hydra Corp.*, 615 N.E.2d 70 (Ill. App. Ct. 1993), for the proposition that "the natural results of negligent and unworkmanlike construction of a building do not constitute an occurrence." *Broeren Russo Construction*, 54 F. Supp. 2d at 847-48. While the Appellate Courts in *Wil-Freds Construction* and *Hydra* found no duty to defend, in neither case, unlike here,

15

did the named insured damage parts of the building beyond the scope of their work. In *Wil-Freds Construction*, 661 N.E.2d at 452-57, the named insured general contractor was responsible for constructing a new building and for the acts of its subcontractor, and the underlying claimant did not seek damages beyond the costs needed to repair the building. In *Hydra*, 615 N.E.2d at 72-73, 75, the named insured contractor was responsible for constructing an industrial building and there were no underlying allegations of damages to anything other than the contractor's own work. Thus, *Broeren Russo Construction* and like cases do not persuade this Court to reach a different outcome.

Perhaps more compelling for Plaintiff is *Viking Construction*. There, even though the Appellate Court was not faced with a named insured that had caused damage beyond its own work, the Court stated in *dicta* that it would have found no duty to defend even had the subcontractor damaged other parts of the building. 831 N.E.2d at 16. Yet, any weight this Court should give that brief observation is diminished by the absence of further analysis and the Appellate Court's decision six years later in *J.P. Larsen*. As discussed above, the Court in *J.P. Larsen* reached the opposite conclusion when actually faced with a named insured whose faulty work damaged other parts of the building. Far from crediting the *dicta* in *Viking Construction*, the Appellate Court in *J.P. Larsen*, 956 N.E.2d at 532, cited *Viking Construction* to find a duty to defend.

As previewed above, Plaintiff's remaining cases are inapplicable, and they do not warrant extensive discussion. They simply do not involve the fact-pattern

16

present here—the named insured contractor damaging parts of a building or project beyond the scope of its work—or the fact-pattern is not apparent from the face of the opinions. Indeed, the Court in *Leopardo* distinguished some of these same cases for this very reason. *Leopardo Op.* at 7-8. These cases do not add anything new to this Court's analysis.

Having determined that there is "property damage" resulting from an "occurrence" for any damage National Decorating caused to parts of the 200 North Jefferson Building beyond the scope of its work, it follows from the undisputed facts that summary judgment for Defendants is warranted. The damages claimed in at least Count I of the *Association* Third Amended Complaint, including to the Building's ceilings, drywall and floors, are beyond the scope of National Decorating's (the Named Insured) work and thus are covered damages based on this Court's interpretation of "occurrence." 200 North SOF ¶ 19; McHugh SOF ¶¶ 9-11; National Decorating SOF ¶ 11; Westfield SOF ¶¶ 13, 13(f). The *McHugh Construction* Third-Amended Complaint further confirms this outcome. Westfield SOF ¶¶ 20-21. While not all the underlying damages alleged in the *Association* Third Amended Complaint and the *McHugh Construction* Amended Third-Party Complaint are covered, Plaintiff owes a duty to defend Defendants in the Underlying Action where some are covered.[2] *Regal Lofts Condominium*, 764 F.3d at 731; *J.P. Larsen*, 956 N.E.2d at 528. That is the case here.

---

[2] For this reason, this Court declines to address Defendants' alternate theory for finding that Plaintiff owes them a duty to defend. Defendants argue that the damage National Decorating caused to unit owners' personal property also triggers Plaintiff's duty to defend.

17

## IV. Conclusion

For these reasons, this Court grants Defendants' summary judgment motions [65] [73] [76] [123] and denies Plaintiff's cross-motion [70]. As the parties agreed at the November 5, 2015 motion hearing, this Court's ruling renders premature the question of Plaintiff's duty to indemnify because the Underlying Action remains ongoing. *See Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

A status hearing is set for December 1, 2015 at 9:45 a.m. in Courtroom 1725 to address the status of Defendant 200 North Jefferson, LLC's Cross-Claim [33]. This Court will strike the December 1, 2015 status hearing and close out this case if the Cross-Claim is dismissed before that date.

Dated: November 25, 2015

Entered:

*[signature]*

United States District Judge

---

At least one Court has rejected that argument, *see Acuity*, 2015 WL 5163195, at *4-6, and this Court need not consider its merits at this time.